IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CA No.: 1:23-cv-00585-CCE-LPA

JOHN CARSON and RANDALL STARK, )
on behalf of themselves and all others )
similarly situated, )
)
       *Plaintiffs,* )
)
       v. )
)
GKN DRIVELINE NORTH AMERICA, )
INC., )
)
     *Defendant.* )

**<u>PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR AMENDED
MOTION FOR CLASS CERTIFICATION UNDER FED. R. CIV. P. 23 AND FOR
APPOINTMENT OF CLASS COUNSEL UNDER FED. R. CIV. P. 23(G)</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................. 2

        A.      Employees Were Subject to the Same Common Timekeeping
                Practices and Compensation Policies. ........................................... 2

                1.      Defendant's Pre-Shift Timekeeping Policies ..................................... 3

                2.      Defendant's Post-Shift Timekeeping Policies ................................... 4

                3.      Defendant's Meal Break Policies ....................................................... 4

                4.      Defendant's Policies Applied to All Employees Equally, and
                        Employees Performed Similar Job Duties ......................................... 5

        B.      Employees Performed Unpaid Work Beyond Scheduled Shift Times. ........ 5

                1.      Employees Performed Pre-Shift Off-the-Clock Work. ...................... 5

                2.      Employees Performed Post-Shift Off-the-Clock Work. ................... 7

                3.      Employees Worked Through All or Part of Unpaid Meal
                        Breaks. ............................................................................................ 7

III.    LEGAL ARGUMENT ......................................................................................... 8

        A.      Plaintiffs' NCWHA Claims Should Be Certified as a Class Action
                Under Fed. R. Civ. P. 23 (a) and (b)(3). ......................................... 8

                1.      Plaintiffs Satisfy the Rule 23(a) Requirements. ................................ 9

                        i.      The Proposed Classes Are Sufficiently Numerous and
                                Ascertainable .................................................................... 9

                        ii.     The Proposed Classes Satisfy The Commonality And
                                Typicality Requirements. ................................................. 10

                        iii.    Plaintiffs And Their Counsel Will Fairly And
                                Adequately Protect The Interests Of The Classes. ............. 14

                1.      The Proposed Class Satisfies the Requirements of Rule
                        23(b)(3). ......................................................................................... 14

ii

i.      Common Questions of Law and Fact Predominate
Over Any Individual Questions ............................................... 15

a.      Pre-Shift OTC Work Class .......................................... 16

b.      Post-Shift OTC Work Class ........................................ 17

c.      Meal Break OTC Work Class ..................................... 17

d.      Plaintiffs' Proposed Classes Meet the Predominance
Requirement Outlined in Rule 23(b)(3) and Stafford. 18

ii.     A Class Action is the Superior Method for Litigating
This Matter. ............................................................................ 19

2.     Present Counsel Should Be Appointed Class Counsel. ................... 20

IV.    CONCLUSION .................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Sitel Operating Co.*,
  No. 1:16-CV-1051, 2019 WL 13296014 (M.D.N.C. Jan. 24, 2019) ........................ 12, 18

*Alfaro Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*,
  2015 WL 5703569 (E.D.N.C. Sep. 28, 2015) ........................................................... 14, 19

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................................... 15

*Barb v. Heath Consultants, Inc.*,
  No. 1:23-CV-58, 2024 WL 3292835 (W.D. Va. July 3, 2024) ...................................... 18

*Beaulieu v. EQ Indus. Servs.*,
  2009 WL 2208131 (E.D.N.C. Apr. 20, 2009). ............................................................. 14

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ........................................................................................ 11

*Brown v. Nucor Corp.*,
  576 F.3d 149 (4th Cir. 2009) ........................................................................................ 11

*Ceras-Campo v. WF P'ship*,
  No. 5:10-cv-215-BO, 2011 WL 588417 (E.D.N.C. Feb. 9, 2011) ................................. 20

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
  177 F.R.D. 54 (D. Mass. 1997) ..................................................................................... 20

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014) .......................................................................................... 9

*Gaxiola v. Williams Seafood of Arapahoe, Inc.*,
  776 F. Supp. 2d 117 (E.D.N.C. 2011) ...................................................................... 8, 10

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ................................................................................................ 11, 13

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981) ........................................................................................................ 20

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ........................................................................................ 13

iv

*Hodge v. N. Carolina Dep't of Pub. Safety*,
    No. 5:19-CV-478-D, 2024 WL 499523 (E.D.N.C. Feb. 8, 2024) ................................ 19

*Kidwell v. Transp. Com. Int'l Union*,
    946 F.2d 283 (4th Cir. 1991) ........................................................................ 11

*Krakauer v. Dish Network, L.L.C.*,
    925 F.3d 643 (4th Cir. 2019) .................................................................... 9, 15

*Olvera-Morales v. Intern. Labor Mgmt. Corp.*,
    246 F.R.D. 250 (M.D.N.C. 2007) .................................................................. 14

*Perez v. Mountaire*,
    650 F.3d 350 (4th Cir. 2011) ........................................................................ 16

*Rodger v. Electronic Data Systems Corp.*,
    160 F.R.D. 532 (E.D.N.C. 1995) .................................................................. 10

*Romero v. Mountaire Farms, Inc.*,
    796 F. Supp. 2d (E.D.N.C. 2011) ............................................................ 15, 21

*Sharp Farms v. Speaks*,
    917 F.3d 276 (4th Cir. 2019). ...................................................................... 14

*Stacy v. Jennmar Corp.*,
    No. 1:21-CV-15, 2025 WL 2795303 (W.D. Va. Sept. 30, 2025) ................................ 18

*Stafford v. Bojangles*,
    123 F.4th 671 (4th Cir. 2024) .................................................................. 1, 15

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ............................................................................ 12, 15

*Wal–Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................ 11

**Statutes**

N.C. Gen. Stat. § 95-25.1 ................................................................................ 1

N.C. Gen. Stat. § 95-25.7 .............................................................................. 13

**Other Authorities**

2 W. Rubenstein, Newberg on Class Actions
    § 4:50, pp. 196–197 (5th ed. 2012) .............................................................. 12

**Rules**

Fed. R. Civ. P. 23 (a)(1) ................................................................. 11

Fed. R. Civ. P. 23 (b) ............................................................... 9, 22

Fed. R. Civ. P. 23(g)(4) ............................................................. 14

# I. <u>INTRODUCTION</u>[1]

Named Plaintiffs[2] ("Named Plaintiffs") bring this Motion for Class Certification under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95-25.1, *et seq*, on behalf of the employees ("Plaintiffs" or "employees") affected by Defendant GKN Driveline North America, LLC's ("Defendant's") companywide policies of failing to compensate manufacturing employees for all hours worked. Specifically, Defendant's Post-2020 Policy involving suffered or permitted off-the-clock required compensable activities (i.e. pre- and post-shift activities and working meal breaks). Such failures resulted in unpaid wages, at the promised hourly or straight-time rate(s), for hours worked during less than 40-hour workweeks and promised premium rates at time and one-half for all hours worked in excess of 40 hours per week in violation of GKN's policies and thus in violation of the NCWHA. *See* N.C. Gen. Stat. §§ 95-25.1 *et seq.* Plaintiffs move for class certification of their NCWHA class claims under Fed. R. Civ. P. 23(a) and (b)(3), specifically of three defined classes[3]:

### <u>Post-2020 Off-the-Clock ("OTC") Pre-Shift Class</u>

All nonexempt hourly employees who have worked at Defendant GKN's North Carolina facility in Sanford on the manufacturing floor at any time between January 1, 2020, through the present who may have been subjected to Off the Clock ("OTC") required work activities such as obtaining and putting on personal protective equipment, ("PPE") gathering materials,

---

[1] Unless otherwise stated, docket references are to the *Carson* docket, No. 1:23-CV-583.

[2] Plaintiffs have a pending motion for leave to amend their complaint to add a Named Plaintiff who will represent the putative Rule 23 sub-classes, *see* Dkt. 120.

[3] Plaintiffs refined their proposed Rule 23 class definitions to comply with *Stafford v. Bojangles*, 123 F.4th 671 (4th Cir. 2024). Instead of the vague, general allegations of common policies that the court took issue with in *Stafford*, Named Plaintiffs allege specific misconduct, and specifically identify the time in which the off-the-clock work was performed, allowing putative class members to readily determine whether they are appropriate class members.

1

documenting production or speaking to coworkers about production issues at least once prior to the start of their shift (the "Pre-Shift OTC Work Class").

## Post 2020 OTC Post-Shift Class

All nonexempt hourly employees who have worked at Defendant GKN's North Carolina facility in Sanford on the manufacturing floor between January 1, 2020, through the present who may have been subjected to Off the Clock ("OTC") required work activities such as cleaning workstations, talking to coworkers about production, and removing and/or disposing of personal protective equipment ("PPE") at least once following the end of their shift (the "Post-Shift OTC Work Class").

## Post-2020 OTC Working Meal Break Class

All nonexempt hourly employees who have worked at Defendant GKN's North Carolina facility in Sanford on the manufacturing floor between January 1, 2020, through 2023 or the date on which GKN began paying hourly employees for their meal breaks, who may have been subjected to Off the Clock ("OTC") required work activities such as removing and disposing of personal protective equipment ("PPE") and washing hands of hazardous chemicals, ultimately reducing GKN's promised "duty free" thirty (30) minute meal break policy, at least once during their meal break (the "Meal Break OTC Work Class").

Named Plaintiffs also seek to be appointed as class representatives as well as the appointment of Plaintiffs' Counsel as Class Counsel.

## II. FACTUAL BACKGROUND

### A. Employees Were Subject to the Same Common Timekeeping Practices and Compensation Policies.

Defendant promises to pay its Employees for all hours worked and nominally prohibits off-the-clock work.[4] However, beginning in early 2020, Defendant initiated a

---

[4] Dkt. 66-11, Attendance Policy, at *2 ("GKN Automotive pays employees for all time worked. Off-the-clock work is strictly prohibited.").

2

policy regarding time records, meal and rest breaks,[5] and a revised attendance policy[6] that virtually required off-the-clock work. Despite GKN's policy promising to pay for all hours worked, these revised post-2020 policies fail to do so.

### 1. Defendant's Pre-Shift Timekeeping Policies

Generally, Defendant required its Employees to "clock in at the beginning of their shift and clock out at the end of their shift,"[7] but Employees "may not clock in more than three (3) minutes prior to the start of his/her shift,"[8] or they will be subject to discipline.[9] Defendant also required Employees "to be at their work station (or the designated [sic] meeting place where applicable) at the start of their shift."[10] Defendant's policies do not account for any preparatory work, such as putting on personal protective equipment ("PPE").[11]

---

[5] Dkt. 66-12, Time and Break Policy, at *2.

[6] Dkt. 66-11, Attendance Policy.

[7] *See id*. at *3 (requiring employees clock in no earlier than 3 minutes prior to the start of their shift); *see also* Dkt. 66-12, Time and Break Policy, at **2-3.

[8] *Id*.

[9] *See* Dkt. 66-11, Attendance Policy, at **4-5 (providing penalty schedule for clocking in early and clocking out after the end of a shift).

[10] *Id*.

[11] *See id*. *See also* Dkt. 127-3, Justin LaQuay Deposition Transcript (Dec. 19, 2025) ("LaQuay Depo") at 45:19-46:3 (HR Project Specialist Justin LaQuay testifying that he is "not aware" of any GKN policy requiring employees clock in before putting on PPE).

## 2. Defendant's Post-Shift Timekeeping Policies

Defendant's post-shift timekeeping policy was similar,[12] permitting Employees to clock out up to three minutes before the end of their shift.[13] However, clocking out four or more minutes early resulted in discipline.[14]

A similar grace period was not applied to clocking out after an Employee's shift had ended.[15] If an Employee clocked out after their shift ended, they would be subject to discipline[16] and they would receive a quarter of a point.[17] Employees were strictly required to clock in and clock out only at the beginning and end of their shifts.[18]

## 3. Defendant's Meal Break Policies

Defendant promised to provide all hourly employees "with a 30-minute duty-free meal period,"[19] where Employees are promised to be "completely relieved of their job responsibilities."[20] This meal period was to be unpaid.[21] Defendant required Employees to clock out for their meal period exactly at its start and clock in exactly at its end.[22]

---

[12] Dkt. 66-11, Attendance Policy, at *3; Dkt. 66-12, Time and Break Policy, at *2 (providing for a clock-out policy similar to its clock-in policy).
[13] *Id.* ("An employee may clock out up to three (3) minutes prior to the end of his/her shift.").
[14] Dkt. 66-11, Attendance Policy, at **5-6, 8-10.
[15] *Id.* ("Employees may not clock out after the end of the shift unless the employee has received approval from his/her manager to continue work after the end of his/her shift.")
[16] *Id.* ("If an employee clocks out after the end of the shift without approval or four (4) or more minutes prior to the end of the shift without approval, the employee may be subject to discipline.").
[17] Dkt. 66-11, Attendance Policy, at *5 (a quarter point received for "Clocking out after the end of the shift.").
[18] *Id.* at *3.
[19] *Id.* at *3; *see also* Dkt. 71-12, Time and Break Policy, at *3.
[20] *Id.*
[21] *Id.*
[22] *Id.* at **3-4.

4

Employees who took more than 30 minutes for their meal period or do not clock out for their meal periods could be subject to discipline.[23]

### 4. Defendant's Policies Applied to All Employees Equally, and Employees Performed Similar Job Duties

Plaintiffs worked for Defendant as hourly, non-exempt employees responsible for operating machines to produce automotive parts along production lines at Defendant's Sanford plant.[24] Plaintiffs' duties included similar tasks related to the manufacturing of automotive parts.[25] Plaintiffs performed similar duties and worked similar hours pre- and post-shift.[26] Most importantly, all Employees were subject to Defendant's same policies and practices that encouraged off-the-clock work.[27]

## B. Employees Performed Unpaid Work Beyond Scheduled Shift Times.

### 1. Employees Performed Pre-Shift Off-the-Clock Work.

---

[23] *Id.* at *4.

[24] *See* Dkt. 66-3, Heather Weis (Corporate Manager) ("Weis Depo."), at 28:23 (estimating 75% of Defendant's hourly employees operate on the manufacturing line); *Carson*, Dkt. 66-4, Frances Lee (HR Director for Alamance and Roxboro) ("Lee Depo."), at 144:2-22 (same). *See also* Dkt. 121-2, Named Plaintiff David Medley Deposition Transcript (Dec. 17, 2025) ("Medley Depo."); Dkt. 121-3, Opt-In Steven Fike Deposition Transcript (Dec. 12, 2025) ("Fike Depo."); Dkt. 66-19, Opt-In Steven Fike ("Fike Decl."); Dkt. 66-20, Named Plaintiff David Medley ("Medley Decl."); Dkt. 66-21, Opt-In Victor Cruz ("Cruz Decl."); Dkt. 66-23, Opt-In Veneisha Darby ("Darby Decl."); Dkt. 66-24, Opt-In Anthony Seymour (Aug. 9, 2024) ("Seymour Decl.").

[25] Dkt. 66-19, Fike Decl., ¶ 3 (running parts and quality assurance); Dkt. 66-23, Darby Decl., ¶ 2 (same); Dkt. 66-24, Seymour Decl., ¶¶ 2-3 (same); Dkt. 66-20, Medley Decl., ¶ 3 (attending end-of-the-line production); Dkt. 66-21, Cruz Decl., ¶ 3 (same); Dkt. 121-2, Medley Depo., at 53:06-18 (advanced machine operator troubleshooting, repairing, and operating machines); Dkt. 121-3, Fike Depo., at 27:08 (press form operator making parts for vehicles).

[26] Dkt. 66-19, Fike Decl., ¶¶ 4-6 (12 hour and 8.5 hour shifts); Dkt. 66-24, Seymour Decl., ¶¶ 4, 6 (same); Dkt. 66-20, Medley Decl., ¶ 4 (12-hour shifts); Dkt. 66-21, Cruz Decl., ¶¶ 4-5 (12 hour and 10 hour shifts); Dkt. 66-23, Darby Decl., ¶ 3 (8.5 hour shifts); Dkt. 121-2, Medley Depo., at 79:13-17 (three 12-hour shifts); Dkt. 121-3, Fike Depo., at 34:22-35:04 (10.5 hour shifts), 65:03-66:07 (mandatory 12 hour shifts).

[27] *See* Dkt. 66-11, Attendance Policy (same); *see also* Dkt. 66-12, Time and Break Policy.

Despite Defendant's written policies, Employees regularly arrived at the Sanford plant ten to thirty minutes before the start of their shift.[28] Employees needed to work before their scheduled start times to perform pre-shift activities, including but not limited to attending pre-shift meetings, communicating with the previous shift about issues, and donning required PPE consistent with Defendant's written PPE policies.[29] Defendant required Employees be at their machine ready to work at the start of their shift, or be disciplined.[30]

---

[28] Dkt. 66-24, Seymour Decl., ¶¶ 21-22 (30 minutes pre-shift work required; instructed in 2018 not to clock in sooner than 10-15 minutes but workload unchanged); Dkt. 66-23, Darby Decl., ¶¶ 19-23 (10-15 minutes pre-shift off-the-clock work required); Dkt. 66-19, Fike Decl., ¶¶ 20-26 (10 minutes pre-shift off-the-clock work required); Dkt. 66-20, Medley Decl., ¶¶ 15-20 (same); Dkt. 66-21, Cruz Decl., ¶¶ 23-27 (same); Dkt. 121-2, Medley Depo., at 93:11-94:13 (arrived 20 minutes early to complete 15 minutes required pre-shift off-the-clock tasks), 110:07-25 (routinely clocked in as early as window allowed); Dkt. 121-3, Fike Depo., at 43:11-13, 67:01-05 (arrived 20-30 minutes early to complete pre-shift tasks on time).

[29] *See id*.; *see also* Dkt. 66-8, GKN's Employee Handbook, at *16 (PPE required); Dkt. 66-6, Waldron Depo., at 50:01-25 (uniforms covered in chemicals requiring donning/doffing at facility). *See also* Dkt. 66-19, Fike Decl., ¶¶ 20-25 (same); Dkt. 66-20, Medley Decl., ¶¶ 16-20 (same); Dkt. 66-21, Cruz Decl., ¶¶ 23-26 (same); Dkt. 66-23, Darby Decl., ¶¶ 19-23 (same); Dkt. 66-24, Seymour Decl., ¶¶ 23-26 (same); Dkt. 121-2, Medley Depo., at 73:01-74:12 (supervisors enforced the policy to be ready to work when clocked in), 99:13-100:03 (describing pre-shifting PPE donning of pants, boots, gloves, glasses, ear protection, apron, and wet weather clothing), 107:05-12 (2-3 minutes walking to cell after donning PPE), 108:02-13 (12-15 minutes pre-shift work performed); Dkt. 121-3, Fike Depo., at 67:10-72:10 (don safety boots, glasses, and hard hat in locker rooms, walk to cell, communicate with operators during shift transitions).

[30] Dkt. 66-11, Attendance Policy (GKN002548-49), at **3-4 (Defendant's policy applies ½ disciplinary point to Employees for tardiness). *See also* Dkt. 121-2, Medley Depo., at 73:01-74:12 (supervisors enforced this policy), 118:02-119:09 (complained multiple times about off-the-clock PPE don/doffing but told "that's the way it's been").

6

2. <u>Employees Performed Post-Shift Off-the-Clock Work.</u>

Similarly, Employees were regularly required to work beyond their scheduled shift time in order to complete their tasks for the day.[31] Employees regularly spent time removing PPE, cleaning, completing additional work tasks, or facilitating shift transitions.[32] Management was aware of, and often directed, this practice,[33] however, Defendant did not compensate Employees for hours worked beyond their scheduled shifts and after clocking out.[34]

3. <u>Employees Worked Through All or Part of Unpaid Meal Breaks.</u>

Despite Defendant's promise to every hourly Employee that they would receive a meal break for each shift,[35] Employees regularly worked through all or part of their meal breaks to wash oil, grease, and hazardous chemicals from their hands and body and navigate far distances across the plant, regularly reducing their meal breaks by

---

[31] *See* Dkt. 66-24, Seymour Decl., ¶¶ 36-39 (15-30 minutes post-shift work required; sometimes called back to floor to assist next shift for additional 15-20 minutes); Dkt. 66-19, Fike Decl., ¶¶ 36-38 (same); Dkt. 66-20, Medley Decl., ¶¶ 30-32 (same); Dkt. 66-21, Cruz Decl., ¶¶ 31-34 (15-20-minute post-shift off-the-clock work to clean machine overflow; witnessed Employees required to work post-shift; supervisor aware); Dkt. 66-23, Darby Decl., ¶¶ 30-31 (occasional 15-30 minutes post-shift work required); Dkt. 121-2, Medley Depo., at 139:18-141:16 (20 minutes post-shift work required: clock out, then doff PPE, wash grease and oils from hands, and prepare equipment for next day); Dkt. 121-3, Fike Depo., at 82:20-84:23 (15-20 minutes of off-the-clock doffing of hard hat, steel-toed boots, gloves, safety glasses, and ear plugs; cleaning off graphite, grease, changing out of uniform).

[32] *Id.*

[33] Dkt. 66-24, Seymour Decl., ¶¶ 21-23, 26, 38, 40-43 (unpaid hours worked, complaints about same); Dkt. 66-19, Fike Decl., ¶¶ 7, 36, 38 (same), 39-41 (inquired about pay, overheard other Employees' complaints about pay); Dkt. 66-21, Cruz Decl., ¶¶ 7, 12-13, 23 (unpaid hours worked); Dkt. 66-23, Darby Decl., ¶¶ 5, 12, 30 (unpaid hours worked).

[34] *Id.*

[35] Dkt. 66-8, GKN Employee Handbook, at *19 (same); Dkt. 66-11, Attendance Policy, at *3 (stating, *inter alia*, "[h]ourly employees are completely relieved of their job responsibilities during their meal period"); Dkt. 66-12, Time and Rest Policy, at *3.

7

approximately 10 to 15 minutes, particularly because Employees needed to clock in from meal breaks within thirty minutes.[36] Furthermore, Employees' meal breaks were frequently interrupted by supervisors calling them back to accommodate Defendant's production demands.[37] Thus, rarely, if ever, were Employees allowed to enjoy the full 30 minute meal break they were promised.[38]

## III. LEGAL ARGUMENT

### A. Plaintiffs' NCWHA Claims Should Be Certified as a Class Action Under Fed. R. Civ. P. 23 (a) and (b)(3).

Plaintiffs seek class certification for Defendants' failure to pay Plaintiffs for all accrued and earned regular and/or straight-time wages, which would include specifically three classes as identified *supra* at 2-3.

Rule 23 provides a class should be certified where plaintiffs satisfy the four elements of Rule 23(a) and one of the three requirements of Rule 23(b). Fed. R. Civ. P. 23; *see Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117 (E.D.N.C. 2011). As

---

[36] *See* Dkt. 66-19, Fike Decl., ¶¶ 29-31 (off-the-clock work required during meal breaks after timekeeping policy change); Dkt. 66-20, Medley Decl., ¶¶ 23-29 (same); Dkt. 66-21, Cruz Decl., ¶¶ 28-30 (same); Dkt. 66-23, Darby Decl., ¶¶ 25-29 (same); Dkt. 66-24, Seymour Decl., ¶ 28 (same); Dkt. 121-2, Medley Depo. 128:11-25 (clocked out for meal breaks), 131:12-24 (set timer for 25 minutes to return from meal breaks), 159:12-164:10 (walked to restroom to wash hands, necessary because of shavings, oils, and anti-corrosive chemicals, removed PPE, walked to break room; lost 10 minutes); Dkt. 121-3, Fike Depo., at 25:12-36:03 (not instructed to clock out for meal breaks until 2023), 74:12-78:10 (lost 10 minutes from meal breaks while washing grease, oil, and other chemicals from hands).

[37] *See* Dkt. 66-19, Fike Decl., ¶¶ 32-33 (same), 35 (supervisors aware); Dkt. 66-23, Burgess Decl., ¶¶ 20-22, 26 (same; supervisors aware); Dkt. 66-23, Darby Decl., ¶¶ 26-27 (same); Dkt. 66-24, Seymour Decl, ¶¶ 32-35 (same); Dkt. 66-20, Medley Decl., ¶¶ 25-28 (primary duties required through meal breaks); Dkt. 121-2, Medley Depo., at 132:04-135:14 (interrupted when production needs required, at least once per week); Dkt. 121-3, Fike Depo., at 79:05-82:02 (called back early from meal breaks due to production demands 2-3 times per week; missed entire meal break at least once per week).

[38] *See id.*

the record here satisfies the Rule 23 requirements, this matter should be certified as a class action.

### 1. Plaintiffs Satisfy the Rule 23(a) Requirements.

To obtain class certification under Rule 23, a prospective class must satisfy four prerequisites of numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a); *see also Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019). The Fourth Circuit has also recognized that Rule 23 "contains an implicit threshold requirement" of "ascertainability," that the members of a proposed class be "readily identifiable" by way of reference to objective criteria. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

#### i. *The Proposed Classes Are Sufficiently Numerous and Ascertainable*

"Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *See Roldan v. Bland Landscaping Co.*, 341 F.R.D. 23, 31 (W.D.N.C. 2022) (quoting *EQT Prod. Co.*, 764 F.3d at 358). Under this "ascertainability" principle, "a class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *EQT Prod. Co.*, 764 F.3d at 358.

Here, each of Plaintiffs' proposed classes is ascertainable considering testimony from Named Plaintiffs, opt-in Plaintiffs, and Plaintiff's expert regarding any work conducted OTC pre-shift,[39] post-shift,[40] or during meal breaks.[41] *See Mebane,* 2022 WL

---

[39] *See supra* ¶ II(B)(1).
[40] *See supra* ¶ II(B)(2).
[41] *See supra* ¶ II(B)(3).

16961496, at *3 (finding ascertainability requirement met based on representative testimony of employees); *Rodriguez v. Flowers Foods, Inc.*, No. 4:16-CV-245, 2016 WL 7210943, at *5 (S.D. Tex. Dec. 13, 2016) (collecting cases finding that "a proposed class satisfied the ascertainability standard even though individualized testimony would be required to identify class members"). Given that OTC work was performed, the "lack of recordkeeping . . . require[s] some representative testimony of employees" to be used to establish ascertainability. *See Mebane*, 2022 WL 16961496, at *3. As cited above, such testimony exists here, satisfying this requirement.

The numerosity requirement of Rule 23 (a)(1) mandates the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23 (a)(1). No specific number of members is necessary for class certification; instead, the decision must be based upon the particular facts of each case. *See Gaxiola*, 776 F. Supp. 2d at 130 (citing *Rodger v. Electronic Data Systems Corp.*, 160 F.R.D. 532 (E.D.N.C. 1995)). Indeed, as few as eighteen (18) class members may satisfy the numerosity requirement. *See McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 475 (E.D.N.C. 2010). Here, evidence shows several hundred putative class members.[42] Therefore, the numerosity requirement is easily satisfied.

ii.  *The Proposed Classes Satisfy The Commonality And Typicality Requirements.*

Rule 23(a)(2) requires a determination that there are "questions of law or fact,

---

[42]  Dkt. 66-3, Weis Depo., at 27:7-20 (estimating 600 Alamance Employees, 400 Roxboro Employees, and 300 Sanford Employees).

10

common to the class" to unite the potential plaintiffs in the case. *See* Fed. R. Civ. P. 23(a). What matters most in determining "commonality" is "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *See Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The commonality and typicality of representation analysis often involves overlapping facts. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n. 13 (1982); *see also Kidwell v. Transp. Com. Int'l Union*, 946 F.2d 283, 305 (4th Cir. 1991).

"[T]he threshold requirements of commonality and typicality are not high; Rule 23(a) requires only that resolution of the common questions affect all or a substantial number of the class members." *See McLaurin*, 271 F.R.D. 465, 475-76 (citing *Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009)). These requirements may be satisfied even if factual distinctions between the claims of named plaintiffs and of other class members exist. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998).

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Dukes*, 564 U.S. at 350; *see generally* Fed. R. Civ. P. 23 (a)(2). Courts in this district assess this element in NCWHA wage claims by determining whether company-wide wage policies injured the proposed class; satisfying the commonality requirement if "the resolution of the common questions affect all or a substantial number of the class members." *See McLaurin*, 271 F.R.D. at 475. A common question is one where "the *same* evidence will suffice for each member to make a *prima facie* showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*,

11

577 U.S. 442, 454 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)).

Here, despite Defendant's written policies to compensate Plaintiffs for *all* hours worked,[43] Defendant had a practice of requiring Plaintiffs to work off-the-clock pre-shift, post-shift, or during meal breaks to meet Defendant's production goals in violation of N.C. Gen. Stat. §§ 95-25.6, 95-25.7, 95-25.13 and 95-25.22. Specifically, Defendant requires workers to don and doff PPE and be ready to begin machine work precisely at shift start time or upon their return from lunch, which forces employees to perform compensable activities before shift start times,[44] during meal breaks,[45] and after shift end times.[46] These policies cause a common injury among putative Plaintiffs in each class: performing compensable activities OTC at certain times of day for which they are not paid.

This Court certified a similar matter in January of 2019, *Adams v. Sitel Operating Co.*, No. 1:16-CV-1051, 2019 WL 13296014 (M.D.N.C. Jan. 24, 2019) (Biggs, L.J.), where the *Adams* plaintiffs sought Rule 23 certification where the defendant failed to compensate plaintiffs for OTC work performed. *See id.* at *4. This Court found commonality, noting that the plaintiffs "suffered the same injury—that is, [Defendant's] failure to compensate its [employees]…for off-the-clock work performed." Given the common injury, Plaintiffs have met the commonality requirement of Rule 23(a).

---

[43] *See* Dkt. 66-11, Attendance Policy, at *3 ("**GKN [] pays employees for all time worked**."); Dkt. 66-12, Time and Breaks Policy, at *3; Dkt. 66-3, Weis Depo., at 112:20.
[44] *Compare supra* § II(A)(1) *with supra* § II(B)(1).
[45] *Compare supra* § II(A)(2) *with supra* § II(B)(2).
[46] *Compare supra* § II(A)(3) *with supra* § II(B)(3).

12

The typicality requirement of Rule 23(a)(3) is met when the claims asserted by the named plaintiff arise from the same course of conduct, and are based on the same legal theories, as the claims of the unnamed class members, notwithstanding factual differences in the amount of damages claimed. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 428 (4th Cir. 2003) Typicality ensures that a representative "possess[es] the same interest and suffer[s] the same injury as the class members." *Gen. Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 156 (1982).

Here, a comparison of Plaintiffs' claims with opt-in plaintiffs' and other employees' personal experiences, as well as Plaintiffs' Expert Report, shows the typicality requirement is easily met.[47]  Named Plaintiffs, like other Employees, worked for Defendant subject to the same unlawful policies violating the NCWHA, such as the common practice of not compensating employees at the appropriate promised and/or premium hourly rate(s) for all hours worked.[48]

---

[47]  To the extent Plaintiffs' motion for leave to amend the complaint is granted, *see supra* note 1, Medley's clams are typical and common to the proposed classes. *Compare* Dkt. 121-2, Medley Depo., at 73:01-74:12 (supervisors enforced the policy to be ready to work when clocked in), 93:11-94:13 (arrived 20 minutes early to complete 15 minutes required pre-shift off-the-clock tasks), 99:13-100:03 (describing pre-shifting PPE donning of pants, boots, gloves, glasses, ear protection, apron, and wet weather clothing), 107:05-12 (2-3 minutes walking to cell after donning PPE), 108:02-13 (12-15 minutes pre-shift work performed), 139:18-141:16 (20 minutes post-shift work required: clock out, then doff PPE, wash grease and oils from hands, and prepare equipment for next day), 128:11-25 (clocked out for meal breaks), 131:12-24 (set 25-minute timer for 25 minutes to return from meal breaks), 159:12-164:10 (walked to restroom to wash hands, necessary because of shavings, oils, and anti-corrosive chemicals, removed PPE, walked to break room; lost 10 minutes) *with* Dkt. 66-26 ¶¶ 56-58 (Plaintiffs' expert report from Dr. Robert J. Cavazos estimating that employees at the Sanford plant worked 11.67 minutes OTC during meal breaks and an average of 21.5 minutes OTC before and after their shifts).
[48] *See generally* Dkt. 66-11, Attendance Policy; *see also generally* Dkt. 66-12, Time and Breaks Policy.

*iii. Plaintiffs And Their Counsel Will Fairly And Adequately Protect The Interests Of The Classes.*

Lastly, Rule 23(a) requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); (g)(4); *see also Sharp Farms v. Speaks*, 917 F.3d 276, 290 & n.7 (4th Cir. 2019). Plaintiffs must demonstrate that, as class representatives, they (1) "will vigorously prosecute the interests of the class through qualified counsel," and (2) have "common interests with unnamed members of the class." *See Olvera-Morales v. Intern. Labor Mgmt. Corp.*, 246 F.R.D. 250, 258 (M.D.N.C. 2007).

Plaintiffs have the same interests as all other class members: recovering all wages and uncompensated hours worked, including earned, accrued, and unpaid straight and overtime wages.[49] Likewise, class counsel must be "competent and qualified" and able to "vigorously prosecute the class's interests." *See Alfaro Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc.*, 2015 WL 5703569, at *5 (E.D.N.C. Sep. 28, 2015). Plaintiffs' counsel is qualified to be appointed as class counsel because The Law Offices of Gilda A. Hernandez, PLLC has extensive experience litigating complex wage and hour class and collective actions.

Accordingly, Named Plaintiffs and The Law Offices of Gilda A. Hernandez, PLLC will fairly and adequately represent the proposed class in accordance with Rule 23(a)(4).

1. <u>The Proposed Class Satisfies the Requirements of Rule 23(b)(3).</u>

Having determined that all of the requirements of Rule 23(a) have been met, the Court must then determine whether Plaintiff's NCWHA claims fit into one of the four

---

[49] *See supra* § III(A)(1)(ii).

categories of Rule 23(b). Fed. R. Civ. P. 23; *Krakauer*, 925 F.3d at 655; *Roldan*, 341 F.R.D. 23, 33.

Rule 23(b)(3) permits a class action where the prerequisites of Rule 23(a) are met, and two additional criteria are satisfied: (1) that questions of law or fact common to members of the class predominate over any questions affecting only individual members and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3); *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d at 700 (E.D.N.C. 2011). Here, Plaintiffs seek class certification under Rule 23(b)(3).

### i. *Common Questions of Law and Fact Predominate Over Any Individual Questions*

Rule 23(b)(3)'s predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *See Amchem Prods. v. Windsor,* 521 U.S. 591, 623 (1997); *Stafford v. Bojangles*, 123 F.4th 671, 679 (4th Cir. 2024). Questions of law or fact common to putative class members must predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). To satisfy the predominance requirement, "plaintiffs' claims need not be identical" and certain important issues such as damages can be tried separately. *See Krakauer*, 925 F.3d at 659; *Tyson Foods*, 577 U.S. at 453.

In *Stafford*, the Fourth Circuit addressed commonality and predominance in the context of OTC claims. *See Stafford*, 123 F.4th at 679–80 (noting that the commonality and predominance requirements are "necessarily intertwined"). The Fourth Circuit held that

15

evidence of commonality "may come in many forms" but must be more than a "broad theoretical policy." *Id.* at 680. There, plaintiffs attempted to prove commonality using a pre-shift "Opening Checklist" that allegedly showed a policy of OTC work pre-shift, during shift, and post-shift. *Id.* at 679–80. The Fourth Circuit reversed the district court's finding of commonality and predominance because the Opening Checklist could not prove the "diversity of claims," notably the "claims of unpaid off-the-clock wages at any other time" beyond pre-shift. *Id.*

Here, Named Plaintiffs are pursuing three classes, each of which is made up of employees with concrete evidence of OTC compensable work performed at certain times during the workday. *See Perez v. Mountaire*, 650 F.3d 350, 363 (4th Cir. 2011) (defining compensable work activities).

### a.  *Pre-Shift OTC Work Class*

Defendant has a clear common policy that employees cannot clock in more than three minutes before shift start time,[50] and a practice of requiring pre-shift activities such as donning PPE and preparing equipment so that work can begin precisely at shift start time.[51] Employees are disciplined for failure to be at their work station at shift start time and for clocking in more than three minutes before shift start time,[52] which necessarily leads to Plaintiffs performing OTC compensable activities before shift start time.[53] Accordingly, there is concrete common evidence of Defendant's practice to require pre-

---

[50] *See supra* § II(A)(1).
[51] *See id.*; *see also supra* § II(B)(1).
[52] Dkt. 66-11, Attendance Policy, at **4-5 (outlining disciplinary points).
[53] *See supra* § II(B)(1).

shift compensable activities be performed off-the-clock.

### b.     *Post-Shift OTC Work Class*

Defendant has a clear common policy that employees cannot clock out after shift end time,[54] but requires post-shift activities including, but not limited to, doffing PPE, cleaning up workstations, and working until production quotas are met.[55] This necessarily leads to Plaintiffs performing off-the-clock compensable activities after shift end time.[56] Accordingly, there is concrete common evidence of Defendant's practice to require performance of off-the-clock post-shift compensable activities.

### c.     *Meal Break OTC Work Class*

Defendant has a clear common policy requiring that employees take a thirty (30) minute unpaid meal break,[57] and to clock out for this meal break and clock back in before beginning work.[58] After clocking out, employees must wash off hazardous chemicals and walk to and from the cafeteria, often only receiving ten (10) to fifteen (15) minutes for an actual meal break.[59] Defendant penalizes employees who return late by even one (1) minute,[60] which necessarily led to Plaintiffs using their thirty (30) minute meal break to perform compensable work activities so that they could be back at their work station on

---

[54] Dkt. 66-11, Attendance Policy, at **3, 5 (noting an employee "may be subject to discipline for "clock[ing] out after the end of the shift").
[55] *See supra* § II(B)(2).
[56] *See id.*
[57] Dkt. 66-11, Attendance Policy, at **3–4.
[58] *See id.*
[59] *See supra* § II(B)(3).
[60] *See* Dkt. 66-11, Attendance Policy, at *4 (disciplinary points for clocking in after meal break ends).

17

time.[61] Thus, there is concrete common evidence of Defendant's practice of requiring off-the-clock compensable activities during meal breaks for which Plaintiffs were not paid.

        d.    *Plaintiffs' Proposed Classes Meet the Predominance Requirement Outlined in Rule 23(b)(3) and* Stafford.

While the Fourth Circuit did not specifically identify the types of evidence sufficient to satisfy commonality and predominance, since *Stafford*, district courts have found evidence of employees arriving at the work facility thirty (30) minutes early each day sufficient to establish a possible practice of requiring OTC work. *See Stacy v. Jennmar Corp.*, No. 1:21-CV-15, 2025 WL 2795303, at *7 (W.D. Va. Sept. 30, 2025) (denying motion to decertify after considering *Stafford*). As identified above, there is far more evidence here than what is cited as sufficient in *Stacy*.[62] Courts within the Fourth Circuit have found the Rule 23(b)(3) predominance requirement is met in similar matters involving pre-shift, meal break, and post-shift OTC work. *See Adams*, 2019 WL 13296014, at *6; *Barb v. Heath Consultants, Inc.*, No. 1:23-CV-58, 2024 WL 3292835, at *7 (W.D. Va. July 3, 2024) (finding that, in the absence of a written policy, a practice of "demanding productivity requirements" coupled with timesheets and payroll policies, can satisfy the

---

[61] *See supra* § II(B)(3).

[62] Defendant's timekeeping policy has changed throughout the course of this litigation, and specifically requiring that employees are only permitted to clock in three (3) minutes before their required start of shift, further corroborates an unspoken policy that the required activities must still be performed, but simply OTC. *Compare* Dkt. 66-9, Attendance and Punctuality Policy (Mar. 2018) *with* Dkt. 66-11, Attendance Policy (Feb. 2020). Class certification therefore is the most efficient avenue of ensuring the Fourth Circuit's holding in *Stafford* is followed. *Stafford*, 123 F.4th at 683 ("**Workers deserve every penny earned for the honest work they provide their employers, and aggregate litigation may often provide the best means through which to seek relief.**").

18

predominance requirement for an OTC work claim); *Hodge v. N. Carolina Dep't of Pub. Safety*, No. 5:19-CV-478-D, 2024 WL 499523, at \*6 (E.D.N.C. Feb. 8, 2024). Accordingly, Plaintiffs contend that Defendant's written and unwritten policies, taken together, establish a concrete practice of requiring OTC compensable work for which Plaintiffs are not paid.

ii.    *A Class Action is the Superior Method for Litigating This Matter.*

The superiority question under Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3). The Court is to compare the possible alternatives to a class action and determine whether any is superior to the proposed class action. *See Alfaro Zelaya*, 2015 WL 5703569, at \*6. ***The alternative to class action litigation in this case would be individual lawsuits filed by each class member, of which there are several hundred.*** Indeed, "it is a considerable understatement to say that it would be inefficient to require putative class members to litigate individually." *Roldan,* 341 F.R.D. 23, 33. Thus, there is no doubt that litigating individually would be more burdensome on the putative class members and a less efficient use of judicial resources.

Rule 23(b)(3)'s four non-exclusive factors are pertinent to the predominance and superiority determinations, which are: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

19

First, individualized lawsuits would be financially burdensome. On the other hand, the advantages of determining the common issues by means of a class action are evident, as all employees in the class could finalize their claims in *one* proceeding. *See Ceras-Campo v. WF P'ship,* No. 5:10-cv-215-BO, 2011 WL 588417, at *2 (E.D.N.C. Feb. 9, 2011). Second, none of the parties have indicated there is any similar ongoing litigation by the class members against Defendant related to Post-2020 claims for violations of the NCWHA.

Third, Defendant's facilities are located within this district, and all putative class members worked at these facilities within the relevant period of time. The United States District Court for the Middle District of North Carolina has been and will continue to be an appropriate forum for this matter. The Court should seek to effectuate the public policy expressed in Rule 23, in favor of having all similar cases "disposed of where feasible, in a single lawsuit." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 n. 11 (1981).

Fourth, Plaintiffs believe this class action would involve hundreds of Plaintiffs, so it is readily manageable, particularly when compared to classes in other larger cases that have been managed successfully. *See, e.g., Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 62 (D. Mass. 1997) (overseeing the class of approximately 1.8 million). Plaintiffs have shown that their NCWHA claims can properly be maintained as a Rule 23(b)(3) class action, and the Court should certify Plaintiffs' proposed NCWHA classes as described above.

2. <u>Present Counsel Should Be Appointed Class Counsel.</u>

20

Should the Court grant certification, class counsel must be appointed. *See* Fed. R. Civ. P. 23 (g). Class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Romero*, 796 F. Supp. 2d at 715. Plaintiffs' counsel has handled this matter from the outset, identifying and investigating all claims. Also, counsel has handled numerous class actions and will commit the necessary resources to representing the class.[63] Plaintiff's counsel should therefore be appointed as class counsel.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court Plaintiffs' Motion for Rule 23 class certification: (1) certification of this action as a class action under Rule 23(a) and (b)(3) for the NCWHA claims; (2) appointing Named Plaintiffs as class representative; (3) appointing the Law Offices of Gilda A. Hernandez, PLLC as class counsel; (4) approval of the proposed notice of this action and attached formed, *see* Dkt. 123-2;[64] (5) a production of names, job titles, dates of employment, locations of employment, last known mailing addresses, last-known cell numbers, home phone numbers, personal email addresses, dates of birth, and last four digits of SSNs of all putative Rule 23 class members; and (6) ability to distribute the Notice and forms via first class mail, email, text message, and Notice posting at each of Defendant's operating plants in Alamance, Sanford, and Roxboro, to all members of the certified class, with a reminder mailing to be sent 45-days after the initial mailing to all non-responding putative plaintiffs.

---

[63] *See* Dkt. 66-15, Resume of Gilda A. Hernandez.
[64] Plaintiffs propose a singular, hybrid notice be sent to collective/class members, should the Court grant Plaintiffs' motions for class and conditional certification.

Respectfully submitted this December 23, 2025.

/s/ *Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)
Matthew Marlowe (NCSB No. 60035)
Briahna B. Koegel (NCSB No. 62491)
Samuel Byron Frazelle (NCSB No. 59771)
Laura Fisher (NCSB No. 62357)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
215 S. Academy St.
Cary, NC 27511
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com
bkoegel@gildahernandezlaw.com
sbfrazelle@gildahernandlaw.com
lfisher@gildahernandlaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(D)(1)</u>

I hereby certify that the foregoing complies with Local Rules 7.3(d)(1), as it contains

6,168 words, excluding parts of the memorandum that are exempted by LR 7.3(d)(1).

I certify that the foregoing is true and accurate.


Respectfully submitted this December 23, 2025.


*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB #36812)
Matthew S. Marlowe (NCSB No. 60035)
Briahna B. Koegel (NCSB No. 62491)
Laura Fisher (NCSB No. 62357)
S. Byron Frazelle (NCSB No. 59771)
**THE LAW OFFICES OF GILDA A.**
**HERNANDEZ, PLLC**
215 S. Academy St.
Cary, NC 27511
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com
bkoegel@gildahernandezlaw.com
lfisher@gildahernandezlaw.com
sbfrazelle@gildahernandezlaw.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2025, the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR AMENDED MOTION FOR CLASS CERTIFICATION UNDER FED. R. CIV. P. 23 AND FOR APPOINTMENT OF CLASS COUNSEL UNDER FED. R. CIV. P. 23(G)** was served in accordance with the Federal Rules of Civil Procedure on the following:

Paul DeCamp (Special Admission)
**EPSTEIN, BECKER & GREEN, P.C.**
1227 25th St., N.W., Suite 700
Washington, D.C. 20037
Tel: (202) 861-1819
Fax: (202) 296-2882
pdecamp@ebglaw.com

Adriana S. Kosovych (Special Admission)
Christopher Coyne (Special Admission)
Eduardo J. Quiroga (Special Admission)
Alexandria K. Adkins (Special Admission)
Christopher Dyess (Special Admission)
**EPSTEIN, BECKER & GREEN, P.C.**
875 Third Avenue
New York, NY 10022
Tel: (212) 351-4500
Fax: (212) 878-8600
akosovych@ebglaw.com
ccoyne@ebglaw.com
equiroga@ebglaw.com
aadkins@ebglaw.com
cdyess@ebglaw.com

Kevin S. Joyner
Vanessa N. Garrido
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
8529 Six Forks Road, Suite 600
Raleigh, North Carolina 27615
Tel: (919) 787-9700
Fax: (919) 783-9412
Kevin.joyner@ogletree.com
Vanessa.garrido@ogletree.com
*Attorneys for Defendant*

*/s/ Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB No. 36812)

24

Matthew S. Marlowe (NCSB No. 60035)
Briahna B. Koegel (NCSB No. 62491)
Laura Fisher (NCSB No. 62357)
S. Byron Frazelle (NCSB No. 59771)
**THE LAW OFFICES OF GILDA A.
HERNANDEZ, PLLC**
215 S. Academy St.
Cary, NC 27511
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
mmarlowe@gildahernandezlaw.com
bkoegel@gildahernandezlaw.com
lfisher@gildahernandezlaw.com
sbfrazelle@gildahernandezlaw.com
*Attorneys for Plaintiffs*

25